UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Telebrands Corp., <br><br> Plaintiff, <br><br> v. <br><br> Seasonal Specialties, LLC, <br><br> Defendant. | Case No. 17-cv-4161 (WMW/HB) <br><br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant Seasonal Specialties' ("Seasonal") Motion to Stay Pending Reexamination of Patents [Doc. No. 34]. Seasonal moves the Court to stay this patent infringement lawsuit pending the resolution of reexamination and post-grant review proceedings at the U.S. Patent and Trademark Office ("Patent Office") pertaining to U.S. Patent No. 9,546,775 ("the '775 patent") and U.S. Patent No. 9,752,761 ("the '761 patent"). For the reasons set forth below, the Court grants the motion.

**I.  BACKGROUND**

Seasonal is a Minnesota company that develops, imports, and sells decorative lighting products to retailers. (Fagerlee Decl. ¶ 2 [Doc. No. 11-2].) Telebrands is a New Jersey company that also sells, among other things, decorative lighting products. (Compl. ¶¶ 7-8 [Doc. No. 1].) On May 11, 2017, Telebrands filed a lawsuit in the District of New Jersey alleging that Seasonal's Laser Motion product—a device that

1

projects light in decorative holiday patterns— infringes Telebrands' U.S. Patent No. 9,546,775 ("the '775 patent") and U.S. Design Patent No. D773,707 ("the D'707 patent"). (Compl. ¶¶ 23-37.) The '775 patent claims a decorative laser light apparatus with two laser light sources. (Pl.'s Ex. B at 30-48 [Doc. No. 1].) The D'707 patent claims an ornamental design for a laser light with two light sources. (Pl.'s Ex. A at 21-29 [Doc. No. 1].) Telebrands' Star Shower line of products incorporates the technology and designs covered by the patents.

On May 26, 2017, a few weeks after Telebrands filed its patent infringement suit, Seasonal filed its own suit in the District of Minnesota seeking a declaratory judgment that its activities did not infringe the Telebrands patents. Complaint, *Seasonal Specialties v. Telebrands*, No. 17-cv-1768 (D. Minn. May 5, 2017), ECF No. 1. Seasonal also moved to dismiss or transfer Telebrands' patent suit against it from the District of New Jersey to the District of Minnesota on the ground that Seasonal neither resided in nor had a regularly established place of business in New Jersey. [Doc. No. 11]. The Honorable Jose Linares granted the motion and transferred the case to this Court. [Doc. No. 16.] The two cases were subsequently consolidated into the instant action. [Doc. No. 46.]

On July 13, 2017, shortly after Telebrands filed the instant suit, a third party filed a request in the United States Patent Office for an *ex parte* reexamination of the '775 patent. (Merrill Decl. [Doc. No. 37].) The Patent Office ordered reexamination on August 1, 2017, finding a substantial new question of patentability as to all 25 claims of the '775 patent. (Def.'s Ex. B at 4-5 [Doc. No. 37-2].) Seasonal then moved to stay the

litigation in this Court pending the completion of the reexamination proceedings regarding the '775 patent [Doc. No. 34]. On October 31, 2017, Telebrands moved for leave to file an amended complaint to add, *inter alia*, claims of patent infringement relating to its recently issued '761 patent [Doc. No. 51]. Subsequently, on November 24, 2017, the Patent Office ordered reexamination of the '761 patent, which had also been requested by a third party. (Pl.'s Suppl. Mem. Opp'n at 1 [Doc. No. 71].)

On January 3, 2018, the undersigned heard arguments on Seasonal's Motion to Stay and Telebrands' Motion to Amend. (Hr'g Tr. [Doc. No. 66].) The day before the hearing, Telebrands notified the Court of its intention to seek leave to further amend its complaint to add claims relating to its newly issued U.S. Design Patent No. D804,083 ("the D'083 patent") and U.S. Design Patent No. D804,715 ("the D'715 patent"). (Jan. 2, 2018 Letter [Doc. No. 59].) After providing Seasonal with the opportunity to respond to Telebrands' oral motion, the Court granted leave to add claims pertaining to the '761, D'083, and D'715 patents and ordered Telebrands to file its amended complaint by January 31, 2018. (Hr'g Tr. at 44; Jan. 26, 2018 Order [Doc. No. 79].)

With respect to the Motion to Stay, Seasonal argued at the hearing that, in addition to the reasons cited in its briefing, the Court should also stay the district court litigation while the Patent Office considered petitions brought by third parties seeking post-grant review[1] of the '761 and '775 patents. Because Telebrands did not have an opportunity to

---

[1] The Leahy-Smith America Invents Act created the post-grant review process, whereby a petitioner can seek review by the Patent Office, via the Patent Trial and Appeals Board, of a recently issued patent on any grounds that can be used to challenge the validity of a patent other than failure to disclose the best mode. 35 U.S.C. § 321(b); *see also* Pub. L.

3

fully review and respond to this and certain other arguments raised by Seasonal at the hearing, the Court permitted supplemental written argument. [Doc. Nos. 71, 83].

## II.   DISCUSSION

The Court has the power to stay proceedings in order to control its docket, to conserve judicial resources, and to provide for the just determination of cases that pend before it. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The party seeking to stay litigation bears the burden of showing that such a course is appropriate. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). District courts may, and often do, stay patent litigation pending the conclusion of a Patent Office reexamination or post-grant review, recognizing that such a stay can serve judicial economy. *VData, LLC v. Aetna, Inc.*, Civil No. 06-1701 JNE/SRN, 2006 WL 3392889, at *6 (D. Minn. Nov. 21, 2006); *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014); *see also Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:15-CV-551-RC-JDL, 2017 WL 379471, at *2 (E.D. Tex. Jan. 24, 2017); *SZ DJI Tech. Co. v. Yuneec Int'l Co.*, No. CV 16-0595-BRO (KKX), 2016 WL 9114148, at *2 (C.D. Cal. Dec. 1, 2016). Indeed, "it is often prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents." *Card Tech. Corp. v. DataCard Corp.*, No. 05-cv-2546 (MJD/SRN), 2007 WL 2156320, at *4 (D. Minn. July 23, 2007).

In short, "a stay is usually warranted unless other factors outweigh the potential

---

No. 112-29, § 6(d), 125 Stat. 306 (2011).

benefits of awaiting the outcome of reexamination." *Card Tech.,* 2007 WL 2156320, at *4. However, the "decision whether to grant the stay is a matter for the discretion of the district court." *Regalo Int'l, LLC v. DEX Prod., Inc.*, No. CIV 08-4206 ADM/AJB, 2009 WL 2951107, at *1 (D. Minn. Sept. 9, 2009). When evaluating a request to stay litigation, district courts consider three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in the litigation and facilitate trial; and (3) whether discovery is complete and a trial date is set. *3M Innovative Properties Co. v. EnvisionWare, Inc.,* No. 09-1594 (ADM/FLN), 2010 WL 11537508, at *1 (D. Minn. Oct. 13, 2010).

### A. Whether a Stay Would Unduly Prejudice Telebrands

"Courts may find a stay unduly prejudicial where the movant appears to seek it for tactical advantage." *Ecolab, Inc. v. FMC Corp.*, No. 05-CV-831(JMR/FLN), 2007 WL 1582677, at *1 (D. Minn. May 30, 2007). However, delay by itself does not constitute undue prejudice. *Arctic Cat Inc. v. Polaris Indus. Inc.,* No. CV 13-3579 (JRT/FLN), 2015 WL 6757533, at *3 (D. Minn. Nov. 5, 2015); *Card Tech.,* 2007 WL 2156320, at *6. Instead, "the key inquiry is whether [] delay would prejudice or tactically disadvantage the non-moving party." *Arctic Cat Inc.*, 2015 WL 6757533, at *3*. For instance, a party could be unduly prejudiced if a lengthy stay results in the erosion of evidence, such as witness memories of significant facts. *See Am. Med. Sys. v. Laser Peripherals*, LLC, No. CV 08-4798 (JNE/FLN), 2010 WL 11537576, at *2 (D. Minn. Feb. 23, 2010). A patentee opposing a motion to stay may also suffer undue prejudice if the parties are direct competitors and delay would allow continued sales to erode market share.

*Honeywell Int'l, Inc. v. Furuno Elec. Co.,* No. CIV. 09-3601, 2010 WL 3023529, at *2 (D. Minn. July 30, 2010). On the other hand, the Court should take into account that an award of monetary damages "can ameliorate potential undue prejudice, especially where the non-moving party has not explained why money damages are not an adequate remedy." *Intellectual Ventures II LLC v. U.S. Bancorp*, No. CIV. 13-2071 ADM/JSM, 2014 WL 5369386, at *5 (D. Minn. Aug. 7, 2014).

Telebrands argues that a stay in this case would cause undue prejudice that cannot be fully remedied by a monetary award. (Pl.'s Suppl. Mem. Opp. at 6 [Doc. No. 71].) It points out that a stay pending Patent Office review could significantly delay the case. A stay pending reexamination could delay the case up to five years, the average length of reexamination proceedings and subsequent appeals. A stay pending post-grant review could delay the case by at least a year and a half (not counting appeals), according to statutory timelines. *See* 35 U.S.C. §§ 324(c), 326(a)(11). Moreover, Telebrands points out, the Patent Trial and Appeal Board (PTAB) has not yet determined whether to institute post-grant review on either petition.[2] During that time, Telebrands contends, Seasonal would be able to compete against it using Telebrands' own technology. Even if it eventually prevailed in this lawsuit, Telebrands argues it could not be made whole because in the interim it would have permanently lost market share to Seasonal's

---

[2] While the parties disagreed as to the precise date, it appears at the latest a PTAB decision on whether to review the '775 patent would be issued by April 27, 2018, and on the '761 patent by July 5, 2018. (Pl.'s Suppl. Mem. Supp. at 5 [Doc. No. 71].) If review is instituted on either or both patents, a final determination by PTAB would not be expected until mid-2019. (*Id.* at 6.) Those decisions would, in turn, be subject to review on appeal to the United States Court of Appeals for the Federal Circuit.

products, an impact Telebrands claims could not be fully measured or compensated by monetary damages.

The Court should not lightly countenance any delay in moving a case toward final resolution; however, it is not persuaded by Telebrands' arguments that a stay in this case would cause the kind of undue prejudice contemplated by *Honeywell*. *See* 2010 WL 3023529, at *3. First, while reexamination proceedings can be lengthy and are not bound by strict deadlines, post-grant reviews, by statute, must be completed within a compressed timeframe. 35 U.S.C. §§ 324(c), 326(a)(11). Furthermore, although Telebrands and Seasonal are direct competitors, Telebrands did not move for a preliminary injunction in this case, nor did it proffer in opposition to this motion specific evidence to support anything more than a theoretical concern that Seasonal's continued sales of the accused products during the period the case might be stayed would cause an irreparable loss of market share. Nor did Telebrands cite specific evidence or witnesses that are at particular risk of loss or deterioration in the interim. Finally, unlike the situation in *3M Innovative Properties v. EnvisionWare*, there is nothing to suggest in this case that Seasonal delayed in seeking a stay or is attempting to gain an unfair tactical advantage by doing so. *See* 2010 WL 11537508, at *2. Accordingly, the Court finds that this factor does not militate against a stay.

### B. Whether the Lawsuit is at an Appropriate Stage for a Stay

As the court noted in *Card Tech,* the typical reason courts deny a stay when the patents-in-suit are in reexamination "is that the case has progressed through the bulk of pre-trial proceedings and is scheduled for trial shortly." *Card Tech.,* 2007 WL 2156320

7

at *4.  Seasonal and Telebrands agree that this litigation is in its early stages.  Although the parties have exchanged initial disclosures, fact discovery has barely begun, depositions have not been taken, infringement and invalidity contentions and counter-contentions have not been exchanged, expert discovery has not commenced, and no trial date has been set.   Staying litigation to allow for the Patent Office to complete its review of patents-in-suit may be warranted to avoid "duplicitous and unnecessary discovery," *Pacesetter, Inc. v. Cardiac Pacemakers*, No. CIV.02-1337(DWF/SRN), 2003 WL 23303473, at *2 (D. Minn. Nov. 19, 2003), and the benefit to the discovery process is maximized when "neither party has taken any discovery in a case and [] a trial date has not been set."  *VData, LLC v. Aetna, Inc.*, No. CIV 06-1701 JNE/SRN, 2006 WL 3392889, at *8 (D. Minn. Nov. 21, 2006).  This consideration distinguishes this case from the circumstances before Judge Montgomery in *3M Innovative Properties v. Envisionware*,  in which discovery was nearly completed, claim construction statements were submitted, the Markman hearing was scheduled, and extensive settlement discussions had taken place.  *3M Innovative Properties Co. v. Envisionware, Inc.*, No. CV 09-1594 (ADM/FLN), 2010 WL 11537551, at *3 (D. Minn. Aug. 20, 2010), *aff'd*, No. CV 09-1594, 2010 WL 11537508 (D. Minn. Oct. 13, 2010).  Thus, this factor weighs in favor of a stay.

### C. Whether a Stay Will Simplify the Issues or Serve Judicial Economy

As already discussed, courts have recognized that staying patent litigation pending reexamination or post-grant review can serve judicial economy.  Among other advantages, a stay pending Patent Office review can help limit discovery problems

8

relating to prior art, encourage settlement, reduce the complexity and length of litigation, narrow the issues and defenses at play in the lawsuit, and reduce costs for the parties and the court.  *VData, LLC*, 2006 WL 3392889, at *6 (citing *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, No. 85 C 7565, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987)); *Card Tech.*, 2007 WL 2156320, at *4 (noting that "it is often prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents").  Proceeding with litigation while the Patent Office reviews patents-in-suit runs the risk that "discovery may be far broader in scope than necessary" given that "the validity of claims that may be modified or eliminated." *Honeywell*, 2010 WL 3023529, at *3.

Seasonal argues that granting the stay while the Patent Office reexamines the '775 patent will simplify the issues for trial by narrowing the potential bases for infringement. It points out that the Patent Office has already found substantial new questions regarding the validity of all claims of that patent.[3]  Thus, it is highly possible that the claims of the '775 patent may differ greatly in scope and content from the current claims after reexamination is completed.  Moreover, Seasonal argues, if the Patent Office grants the pending petitions for post-grant review of both the '775 and '761 patents, that process

---

[3]  Because reexamination of the '761 patent was not ordered until after Seasonal's initial brief was submitted, neither party addressed the scope of the reexamination ordered as to that patent.  However, public records indicate the Patent Office found substantial new questions of patentability as to each of the 11 claims of the '761 patent. *Mail Stop* Ex Parte *Reexam*, Dec. Comm'r Pat., No. 90/014,044, (Nov. 24, 2017), *available at* https://portal.uspto.gov/pair/PublicPair.

could also lead to the amendment or invalidity of some or all of the utility patent claims that have been asserted in this case.

Telebrands counters that neither reexamination nor post-grant review (if instituted) would do enough to simplify the issues to warrant a stay because the technology is not difficult or complex, and in any event, not all of the patents-in-suit are subject to Patent Office review.  It cites *3M Innovative Properties v. Envisionware*, in which the court found that a "stay will not simplify the issues in litigation because . . . only two of the three patents-in-suit are in reexamination."  2010 WL 11537551, at *2.  In this case, Telebrands asserts infringement of not only the '761 and '775 patents but of three design patents, none of which is under review at the Patent Office.  It argues the goal of efficiency would not be sufficiently served by staying the case given that other patents-in-suit would be "left languishing and unresolved" while the stay is in effect.  *See Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, No. CIV. 12-2730 ADM/AJB, 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013).

But as Seasonal points out, there are a number of cases in which courts in this district have concluded a stay would be warranted even though not all of the patents-in-suit were undergoing Patent Office review.  *See, e.g.*, *Card Tech.*, 2007 WL 2156320, at *3, 5 (granting stay of entire case even though only two of the three patents-in-suit were subject to reexamination); *TimeBase Pty Ltd. v. The Thomson Corp.*, Civil Nos. 07-1687 (JNE/JJG), 07-4551 (JNE/JJG), 2008 WL 1959061, at *2 (D. Minn. May 6, 2008) (staying case even though patent-in-suit was in reexamination, in light of reexamination of related patent); *Pacesetter Inc. v. Cardiac Pacemakers, Inc.*, No. Civ. 02-

10

1337(DWF/SRN), 2003 WL 23303473, at *3-4 (D. Minn. Nov. 19, 2003) (granting stay of entire case where only two of four patents-in-suit were subject to reexamination); *see also VData,* 2006 WL 3392889, at *8 (noting that a stay was appropriate before reexamination was ordered where reexamination had been ordered for related patents).

      Furthermore, Seasonal contends that Patent Office review of the two utility patents will actually simplify issues regarding the scope of the asserted design patents as well. (Def.'s Reply Br. at 1 [Doc. No. 83].)  A design patent protects the "novel, ornamental features" of a product, but not its functional features.  *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).  Thus, a design patent cannot be used to restrict competitors from utilizing a functional feature of the claimed invention.  *Id.*  Seasonal posits that the parties' submissions and the findings underlying the Patent Office's decisions pertaining to the utility patents are likely to highlight and identify the functional features of the claimed inventions and to clarify the prior art, both of which would provide helpful guidance regarding the scope and validity of the design patents.

      Telebrands argues, and the Court agrees, that the precise effect the Patent Office proceedings may have on the litigation of the design patents is not clear at this juncture, particularly given that the Patent Office has not yet determined whether and on what grounds to institute post-grant review of the two utility patents.  But it is highly likely the Patent Office proceedings that have already been instituted, and any that may hereafter be instituted,[4] will have a material effect on the '775 and '761 patents, and that judicial

---

[4]  Telebrands suggests the Court should at least defer decision about a stay until the Patent Office determines whether it will institute the post-grant reviews.  (Pl.'s Suppl.

11

efficiency and economy would result from a stay of this litigation in the interim. The question, then, is whether it makes sense to split the case and continue to litigate Telebrands' design patent infringement claims while a stay of litigation pertaining to the utility patents is in effect. For reasons similar to those articulated in *Card Tech,* the Court believes it does not make sense to do that here. First, Telebrands itself maintains that there is significant overlap among the products accused of infringing the utility patents and the products accused of infringing the design patents.[5] Logically, therefore, there is also likely to be significant overlap among the percipient witnesses on both sides who will discuss the design, development, marketing, and sales of those products. As for written discovery, in the Court's experience, splitting up document searches and reviews issue by issue is rarely a cost-effective approach and often leads to additional motion practice. Finally, the Court can foresee complications in analyzing damages if litigation continues only as to the design patents while the validity and scope of the utility patents is being considered by the Patent Office.

In light of the foregoing discussion, the Court finds that the likely benefits in terms

---

Mem. Opp. at 5-6.) It is true that the case for granting a stay is diminished when a petition has merely been filed with the Patent Office but review has not yet been instituted. *See, e.g., Dane Techs., Inc.*, 2013 WL 4483355, at *1; *Skky, Inc. v. Manwin USA, Inc.*, No. 13-2085 (PJS/JJG), 2014 WL 12527215, at *1 (D. Minn. Oct. 29, 2014). But this argument loses its force where, as here, reexamination has already been ordered for both of the utility patents-in-suit.

[5] Telebrands asserts that more than two-thirds of Seasonal's accused product sales infringe the D'707 patent. (Pl.'s Suppl. Mem. Opp. at 7.) Seasonal asserts that 90% of its accused product sales are accused of infringing the '775 and '761 patents (Hr'g Tr. at 11-13.), but offered no specific information regarding the percentage of product sales accused of infringing at least one design patent. Notably, neither party supported its arguments on this point with sworn declarations.

of simplification of the issues and judicial economy warrant a stay of this case in its entirety at least pending the conclusion of any post-grant review of the '775 and '761 patents, particularly given the early stage of the litigation and the absence of any concrete basis to conclude Telebrands would be unduly prejudiced.  The Court will not, however, determine at this time whether the stay should continue through the conclusion of the reexaminations and/or any appeals associated with either set of Patent Office proceedings.  Rather, the Court will require periodic status updates from the parties, beginning with an update no later than July 26, 2018, concerning whether post-grant review was instituted as to either or both of the challenged patents.  The Court may revisit the scope or length of, or the continued justification for, the stay in light of new developments.

Accordingly, **IT IS HEREBY ORDERED** that Seasonal Specialties' Motion to Stay [Doc. No. 34] is **GRANTED.**

Dated:  February 23, 2018

                                        s/ *Hildy Bowbeer*
                                        HILDY BOWBEER
                                        United States Magistrate Judge